# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GREGORY L. SAMS, | ) |
|     Petitioner, | ) ) ) |
| vs. | ) ) Case No. 04-0998-CV-W-ODS-P |
| LARRY DENNEY, | ) ) ) |
|     Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

Petitioner, Gregory L. Sams, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on November 2, 2004, seeking to challenge the 2003 revocation of his parole by the Missouri Department of Probation and Parole. On December 22, 2004, respondent filed a response (Doc. No. 7) to the Court's Order to show cause, contending that petitioner's petition should be dismissed because it was a mixed petition of exhausted and unexhausted claims. On March 14, 2005, at petitioner's request,[1] unexhausted Grounds 3, 4, 5, and 6 of the original petition were dismissed, with prejudice. (Doc. No. 15). Respondent filed a supplemental response (Doc. No. 25) on October 28, 2005, which addressed petitioner's remaining two grounds for relief. Petitioner has filed a reply thereto. (Doc. No. 27). Petitioner also filed a supplemental reply on December 13, 2005. (Doc. No. 28).

Petitioner's remaining grounds for relief are: (1) he was denied due process during his parole revocation hearing because: (a) he was not presented with any of the evidence used to revoke his parole; (b) he was not allowed to confront adverse witnesses; (c) there was no "neutral and detached" hearing

---

[1] See Doc. No. 13 (petitioner's request to delete unexhausted claims).

body; and (d) he was not given notice of the alleged parole violations; and (2) the conditions of petitioner's parole were unconstitutional.

Respondent concedes exhaustion of Grounds 1(a), 1(b), 1(c), 1(d) and 2, but contends that they are all without merit.

## **SUMMARY OF FACTS**

On February 6, 2002, petitioner was conditionally released by the Missouri Board of Probation and Parole ("MBPP"). (Petitioner's Exhibit "B"). Petitioner's parole included the conditions that he "shall not handle other people's money" and "shall not work with the elderly." (Id.).

On August 26, 2003, petitioner was arrested by MBPP Officer Sandra Domalewski, after she received complaints from the Kansas Attorney General's Office that petitioner was contacting elderly people on behalf of his corporation "Benefit Reduction Services" in order to sell those people nursing home discount plans and prescription drug benefits. (Petitioner's Exhibit "D," p. 2). Officer Domalewski learned that petitioner contacted three elderly people (ages 84, 85, and 83), advertising his services and eventually drafting money from their bank accounts. (Id.). Each of these three alleged instances violated the special conditions mentioned herein.

In a supplemental "Field Violation Report," MBPP Officer Beth Johnson detailed petitioner's response to these allegations,

> In response to the violation of Parole Condition #10.1-Special Conditions, Sams stated, "On that particular lady, when I called about the account it was because she was [a] previous policy holder of one of the companies I worked for in the past. I had information on the prescriptions she had[,] so I knew I could save her money on prescriptions. Her and her husband had a policy with the company that I use[d] to work for. I was offering her discounts on prescriptions. She gave me the prescription information

Case 4:04-cv-00998-ODS   Document 33   Filed 12/28/05   Page 2 of 10

> and bank account information. She had to give me the information in order for me to make the draft on her account. We ended up giving her a full refund because her daughter was unhappy. In regard to [WM], Sams stated, "I don't know who that lady is. If it's for $299 then that's from when I first started out. She wanted the services because she wanted the up to 20% discount. We can't draft the account without them giving us the information." In regard to the undercover investigator for the Kansas Attorney General's Office, Sams stated, "I remember that conversation. I told her that we give the nursing home benefit for free through Care Scout and that we were focusing on prescription discount[s] because that's where we save the money. The prescription program depends on the price of the prescription. She asked if the program was $299, and I told her no, that the nursing home benefit is free and the price of the prescription program depends on the price of the prescriptions."
>
> In response to the violation of Parole Condition #10.2-Special Conditions, Sams stated, "That was the same thing. It was for him and his sister. He gave me the information. We couldn't do anything for his sister because she was in a nursing home and on Medicaid. He didn't tell me that initially so I had to call him back. He didn't want it when he found out that I couldn't cover her. The money was refunded to him."
>
> Sams advised this Officer that he knew he was violating his Parole by conducting business with the elderly, but that this was the only field of work that he was familiar with. Sams further advised this Officer that he was "doing it the right way," and that all of his business dealings were legal this time.

(Petitioner's Exhibit "E," p. 2).

On November 11, 2003, petitioner was notified that his revocation hearing would be held on December 3, 2003. (Petitioner's Exhibit "L"). At this time, petitioner was provided with a copy of the booklet, "Rights of Alleged Violator to Preliminary and Revocation Hearing." (Id.). Two copies of this booklet have been provided to the Court by petitioner. (Attachments to Exhibit "H"). The record indicates that petitioner waived his right to a preliminary hearing. (Petitioner's Exhibit "H").

On December 7, 2003, the MBPP held a final revocation hearing. (Petitioner's Exhibit "K"). A

-3-

transcript of this hearing has not been provided to the court. However, the record indicates that petitioner's conditional release was revoked on January 14, 2004. (Id.). In its decision, the MBPP noted that during his revocation hearing, petitioner admitted to the violations and that a copy of the order of revocation had been provided to petitioner. (Id.).

Petitioner raised claims similar to his current ones in a state habeas corpus petition. The Missouri Supreme Court summarily denied his petition on October 26, 2004. (Respondent's Exhibit "D").

## **STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Terry Williams v. John Taylor</u>, 529 U.S. 362, 412-13 (2000),[2] habeas relief can only be granted if the resolution of petitioner's grounds for relief by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

In <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1973), the United States Supreme Court set forth several minimum due process requirements for parole revocation proceedings. Currently the minimum due process requirements for probation or parole revocation pursuant to <u>Morrissey</u> are:

---

[2] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 412-13.

>    (a) written notice of the claimed violations of parole;
>    (b) disclosure to the parolee of evidence against [the parolee];
>    (c) opportunity to be heard in person and to present witnesses and documentary evidence;
>    (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);
>    (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and
>    (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 489.

## GROUND 1(a) - EVIDENCE

In Ground 1(a), petitioner claims that he was "never presented any evidence that the parole revocation board used to revoke my parole prior to or at the hearing." Respondent contends that this ground for relief is without merit and that it was reviewed by the Missouri Supreme Court and found to be meritless.

The record reflects that on August 29, 2003, petitioner was interviewed by MBPP Officer Johnson and responded to questions concerning each of three contacts he had with elderly people. (Petitioner's Exhibit "E," p. 2). Officer Johnson's questions were very specific and included each person, their name, their date of birth, and the nature of petitioner's contact with them. (Id.). Petitioner responded to these question by admitting that each instance occurred and claiming his actions were permissible. (Id.). Therefore, it is evident that petitioner received verbal notice of the allegations against him. The record also reflects that on November 13, 2003, petitioner was provided a copy of the violations report issued by the MBPP. (Petitioner's Exhibit "H"). Therefore, it is also evident that petitioner received written notice of the alleged parole violations. Consequently, petitioner's claim that he was not presented with the evidence

-5-

against him is without merit because he was advised twice before his revocation hearing of the nature of the allegations against him.

Ground 1(a) is denied.

## GROUND 1(b) - ADVERSE WITNESSES

In Ground 1(b), petitioner alleges that he was not allowed to confront or cross-examine adverse witnesses at his revocation hearing and that the board did not provide him with the names of adverse witnesses who gave information against him. Respondent contends that this ground for relief is also without merit.

Petitioner does not allege that he was not allowed to question witnesses who testified against him, but that he was not told who these witness were. This claim is the similar to petitioner's claim that he was not informed of the evidence against him. Petitioner was made aware on August 29, 2003 and on November 13, 2003, of the nature of the allegations against him. (Petitioner's Exhibits "E" & "H"). He admitted both during the interview with Officer Johnson and at his revocation hearing that he had engaged in the activities he was accused of. (Petitioner's Exhibits "E" & "K"). Petitioner's right to confront witnesses is not absolute and he must be able to show prejudice where the right is denied. Country v. Bartee, 808 F.2d 686, 687-88 (8th Cir. 1987). Petitioner cannot show prejudice in view of the fact that he confessed to the parole violations.

Ground 1(b) is denied.

## GROUND 1(c) - NEUTRAL AND DETACHED HEARING BODY

In Ground 1(c), petitioner alleges that the MBPP was not a "neutral and detached hearing body." Petitioner claims that the Board was biased because one of the board members reviewed and signed a

violation report issued by a MBPP employee. Respondent contends that this ground for relief is also without merit. The Court agrees.

The role of the Missouri Board of Probation and Parole is to preside over parole revocation hearings. It is, by its very nature, a neutral and detached hearing body. Furthermore, petitioner's reliance on the fact that one of the board members reviewed a violation report prior to the revocation hearing cannot support a conclusion that his parole was improperly revoked. As the court has previously mentioned, petitioner admitted several times that he violated his parole conditions.

Ground 1(c) is denied.

### GROUND 1(d) - NOTICE

In Ground 1(d), petitioner alleges that he was not given notice of the alleged parole violations because he was never told exactly what the conditions of his parole meant. Petitioner argues that he was "never told [he] could not work for a company outside of the securities or insurance industry, which I could not work in those industries any more and my felonies and conditions of parole were predicated around this felony. It was never stated that I could not work outside this industry. I was free to obtain employment with any company or own my business (self-employment) as long as it was not involved in the securities or insurance industry." Respondent contends that this ground for relief is also without merit.

As the Court found in discussing Ground 1(a), it is apparent that petitioner received both verbal and written notice of the alleged parole violations. His argument that he did not receive notice because he did not understand the special conditions of his parole is meritless. Petitioner was told on December 6, 2002, that he could not "handle other people's money" and could not "work with the elderly." (Petitioner's Exhibit "B"). Petitioner's argument that he believed he was only prohibited from working in the securities

and insurance fields bears no relation to the fact that he was told in very simplistic and specific terms that he was not to work with the elderly or handle other people's money.

Ground 1(d) is denied.

## GROUND 2 - UNCONSTITUTIONAL PAROLE CONDITIONS

In Ground 2, petitioner alleges that the conditions on his parole were unconstitutionally vague. Petitioner argues that the condition restricting him from working with the elderly did not define exactly what activities were prohibited and this allowed the MBPP to enforce the condition arbitrarily. Petitioner also argues that this condition essentially prohibited him from obtaining any work because employers advised petitioner that he would be engaging in discrimination if he refused certain customers based on their age. Finally, petitioner alleges that the condition concerning handling other people's money was also vague in that it did not define what this activity was and, therefore, the MBPP could also arbitrarily enforce this condition. Respondent contends that this ground for relief is also without merit.

The Court finds petitioner's allegations regarding his parole conditions to be without merit. A parole condition is unconstitutionally vague when it fails to provide notice of prohibited conduct and prevents a person of reasonable intelligence from understanding what he is barred from doing. Stephenson v. Davenport Community Sch. Dist., 110 F.3d 1303, 1308 (8th Cir. 1997) [citing Smith v. Goguen, 415 U.S. 566, 572 (1974); Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)]. In this case, petitioner's underlying conviction was for stealing from the elderly. (Respondent's Exhibit "B," p. 9). Parole conditions requiring that he not work with the elderly and not handle other people's money, as applied to petitioner, are not vague. Based on the underlying facts, it is clear that petitioner understood precisely what conduct he was barred from engaging in and yet, admittedly, he engaged in that conduct

-8-

anyway, because "this was the only field of work that he was familiar with."

Ground 2 is denied.

## PETITIONER'S SUPPLEMENTAL REPLY

In his supplemental reply (Doc. No. 28), petitioner requests that the Court take notice of two cases involving the same habeas corpus petitioner: Jackson v. Gill, 704 F. Supp. 969 (W.D. Mo. 1989) (hereinafter Jackson I) and Jackson v. Gill, 711 F. Supp. 1503 (W.D. Mo. 1989) (hereinafter Jackson II). Jackson I was a case which raised "substantial questions as to whether petitioner's probation was revoked in accordance with federal constitutional standards...." In that case, the late Judge John W. Oliver ordered the respondent to supplement the record by filing the revocation hearing transcript and any other relevant documentary evidence where the respondent failed to initially do so. In Jackson II, Judge Oliver granted habeas relief, finding that the petitioner's due process rights were violated for several reasons: (1) notice of the probation violations was inappropriate; (2) there was no evidence of the probation violations adduced at the revocation hearing; and (3) the revocation court failed to issue the proper findings and conclusions used to revoke probation. 711 F. Supp. at 1512.

It is apparent by petitioner's reference to these cases that petitioner takes issue with the fact that the entire revocation record has not been submitted to the Court. To a certain extent, this is true. Most notably, this court has not been provided with the revocation hearing transcript. However, the court does have a copy of the MBPP's order revoking parole, which details the reasons for revoking parole. (Petitioner's Exhibit "K"). The court finds that the remaining exhibits that have been provided to this court provide a sufficient basis from which to determine whether or not petitioner's due process rights were

violated in the revocation of his parole.[3] In addition, the Court finds that this case is in no way analogous to Jackson II, in that there is no "substantial question as to whether petitioner's probation was revoked in accordance with federal constitutional standards."

**ORDER**

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

    /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri
Dated: 12/28/05

---

[3] The Court has been provided with the following documents: petitioner's state habeas corpus petition (Respondent's Exhibit "A"); Suggestions in Opposition to petitioner's state habeas corpus petition (Respondent's Exhibit "B"); petitioner's response thereto (Respondent's Exhibit "C"); the Missouri Supreme Court's summary denial of habeas corpus relief (Respondent's Exhibit "D"); petitioner's original "Conditional Release" form issued by the Missouri Department of Corrections("MDOC") (Petitioner's Exhibit "B"); MBPP Officer Sandra Domalewski's Field Violation Report (Petitioner's Exhibit "D"); MBPP Officer Beth Johnson's Field Violation Report (Petitioner's Exhibit "E"); MBPP Officer Christina N. Gildersleeve's Field Violation Report (Petitioner's Exhibit "F"); petitioner's MDOC Face Sheet (Petitioner's Exhibit "G"); a "Receipt Form" for those conditionally released (Petitioner's Exhibit "H") (indicating that petitioner received copies of the booklet, "Rights of Alleged Violator to Preliminary and Revocation Hearing," the Violations Reports, and the Preliminary Hearing Officer's Report); the MBPP's Order revoking parole (Petitioner's Exhibit "K"); and the notice provided to petitioner of the date and time of the revocation hearing (Petitioner's Exhibit "L").

-10-